UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JULIE F., | § § | |
| Plaintiff, | § § | |
| v. | § § | Case # 1:20-cv-811-DB |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | MEMORANDUM DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Julie F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 28).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 23, 24. Plaintiff also filed a reply. *See* ECF No. 27. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 23) is **GRANTED**, the Commissioner's motion for judgment on the pleadings (ECF No. 24) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

On March 14, 2017, Plaintiff protectively filed her DIB application alleging disability beginning November 7, 2013 (the disability onset date), due to (among other things) impairments of the lumbar spine, hypertension, and chronic obstructive pulmonary disease ("COPD"). Transcript ("Tr.") 12, 70, 166-68, 182. Plaintiff's claim was denied initially on June 15, 2017, after

which she requested an administrative hearing. Tr. 87-98, 99-100. On January 15, 2019, Administrative Law Judge John Loughlin (the "ALJ") conducted a hearing from Alexandria, Virginia. Tr. 10, 32-69. Plaintiff appeared and testified from Buffalo, New York, and was represented by Felice A. Brodsky, an attorney. Tr. 10. Mark A. Pinti, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 5, 2019, finding that Plaintiff was not disabled. Tr. 10-21. On April 30, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 5, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 5, 2019 decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 7, 2013 through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine status post-fusion surgery; degenerative disc disease of the cervical spine; left total knee replacement; chronic obstructive pulmonary disease (COPD); pulmonary hypertension; and essential hypertension. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except she can frequently push or pull and reach overhead with both upper extremities and can occasionally push or pull or operate foot controls with both lower extremities. The claimant can stand and/or walk for up to 4 hours in an 8-hour workday. The claimant can occasionally kneel, crouch, stoop, and crawl, can occasionally climb stairs and ramps, can occasionally climb ladders, can never climb ropes and scaffolds, and can occasionally be exposed to vibrations, unprotected heights, and moving machinery parts. The claimant can have occasional exposure to dust, noxious odors and fumes, poor ventilation, extreme cold, and wetness. The claimant is able to understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

7. The claimant was born on May 25, 1967 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged date of onset. The claimant subsequently changed age category to closely approaching advanced age and was 51 years of age on the date of last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 7, 2013, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

Tr. 10-21.

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on March 14, 2017, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the last date insured. Tr. 21.

## ANALYSIS

Plaintiff asserts two points of error, both of which challenge the ALJ's weighing of the medical opinion evidence. First, Plaintiff argues that the ALJ erred by substituting his own lay opinion for that of any physician and failing to develop the record. *See* ECF No. 23-1 at 15–25. Plaintiff next argues that the ALJ erred by failing to properly evaluate the favorable opinion of consulting orthopedist Robert Bauer, M.D. ("Dr. Bauer"). *Id*. at 25-30. Dr. Bauer performed an independent medical evaluation ("IME") in April 2016. Tr. 328-34. Dr. Bauer also examined

Plaintiff in February 2014 and April 2015 in connection with her Workers Compensation claim. Tr. 330.

The Commissioner maintains that the ALJ properly relied on numerous objective findings of record, Plaintiff's activities of daily living, and portions of medical opinions to support his RFC finding, and his decision was supported by substantial evidence. *See* ECF No. 24-1 at 7-14.

The Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Plaintiff suffered a lumbar spine injury and other injuries in a work accident on November 6, 2013. Tr. 293. An MRI of the lumbar spine on November 25, 2013 revealed a far-left lateral disc extrusion at L2-3, with left L2 nerve root compression and mild disc bulges at L3-4 and L4-5. Tr. 269-70. Orthopedic surgeon Andrew Cappuccino, M.D. ("Dr. Cappuccino") treated Plaintiff for her lumbar spine injuries from December 16, 2013 to at least January 25, 2018. Tr. 278-327, 441-56.

On August 20, 2014, Dr. Cappuccino performed the first stage of a planned two-stage, three-level invasive lumbar spine surgery, consisting of a left lateral retroperitoneal subtotal discectomy, partial corpectomy, disc space distraction, reduction of kyphoscoliosis, and anterior lumbar interbody fusion at L2-3, L3-4, and L4-5, with implantation of metal hardware. Tr. 283. Thereafter, on September 9, 2014, Dr. Cappuccino performed the second stage of the lumbar spinal surgery, consisting of a posterior lumbar laminectomy with subtotal foraminotomy at L4-5 and

L5-S1, closure of incidental durotomy, a nerve root decompression and partial discectomy with subarticular decompression L2-3, L3-4, L4-5, and L5-S1, a bilateral lateral intertransverse fusion at L2-3, L3-4, and L4-5, with implantation of reform pedicle screw rod instrumentation. Tr. 288.

At a follow-up visit with Dr. Cappuccino on December 15, 2014, approximately three months after the second stage of Plaintiff's lumbar surgery, Plaintiff reported she was still having a difficult time dealing with her discomfort. Tr. 308. Thereafter, Plaintiff continued to report persistent back pain that radiated to her buttocks and up her spine to her neck and limited her ability to ambulate. Tr. 314, 364. She occasionally exhibited tenderness to palpation, decreased range of motion, difficulty rising from a chair, and incomplete squat; however, she retained normal gait, ambulated without an assistive device, and exhibited no atrophy, intact sensation, full extremity strength. Tr. 331, 366-67, 432.

Orthopedist Dr. Bauer conducted an IME in April 2016. Tr. 328-34. Dr. Bauer opined that Plaintiff had an exertional ability for sedentary work, could occasionally lift, carry, push or pull 10 pounds, and could occasionally sit, stand, walk, climb, reach overhead at or below the shoulder level, drive a vehicle and operate machinery. Tr. 331. He also opined that Plaintiff should refrain from kneeling, bending, stooping, and squatting. *Id*. Dr. Bauer also opined that Plaintiff could only occasionally "reach overhead at or below the shoulder level." Tr. 330.

In June 2017, consulting internal medicine physician David J. Brauer, M.D. ("Dr. Brauer") conducted an examination at the request of the state agency on behalf of SSA. Tr. 364-74. Dr. Brauer diagnosed Plaintiff with chronic lower back pain, COPD, hypertension, coronary artery disease status post stent, hypothyroidism, and anxiety disorder. Tr. 367-68. He assessed that Plaintiff had mild to moderate limitation in her ability to push, pull, lift, or carry heavy objects and marked limitation in her ability to perform activities that required full or repetitive bending or

7

squatting due to back pain. Tr. 368. He also determined that Plaintiff should avoid dust, smoke, allergens, or other respiratory irritants due to her history of COPD. *Id*.

The same month, state agency consultant R. Dickerson, M.D. ("Dr. Dickerson") reviewed the contents of the SSA disability file at the time and completed a Physical RFC Assessment. Tr. 79-82. Dr. Dickerson opined that Plaintiff could perform light work except that she could frequently climb stairs and ramps, climb ladders, ropes, and scaffolds, stoop, crouch, and crawl. Tr. 80. She could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours, and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. *Id*. He also opined that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. Tr. 81. Dr. Dickerson did not opine any manipulative limitations in reaching, handling, and fingering. Tr. 80.

On September 18, 2017, Plaintiff returned to Dr. Cappuccino complaining of significant mechanical back pain with left leg pain at 7/10 and right leg pain at 9/10, mechanical in nature and "unrelenting." Tr. 452. Dr. Cappuccino indicated that Plaintiff has had a "relapse of this severe mechanical back pain." *Id*. Thereafter, on October 23, 2017, Plaintiff had a CT scan and MRI of the lumbar spine. Tr. 447, 448-49. It appears that Plaintiff also had an EMG and nerve conduction studies of the lower extremities in late 2017 or early 2018. Although the actual EMG report is not in the record, Dr. Cappuccino referenced it several times in his January 15, 2018 treatment notes. Tr. 441-42.

In January 2018, Dr. Cappuccino found reduced sensation to light touch affecting the left leg more so in an L4 and L5 distribution. Tr. 441. He noted that although the recent CT scan showed solid arthrodesis (Tr. 447), the lumbar MRI revealed facet arthropathy, a broad-based disc bulge, and some vacuum phenomenon associated with her facets at L5-S1 as well as early endplate

osteophytosis (Tr. 448-49). Tr. 442. He also noted that a recent EMG revealed evidence of chronic radiculopathy affecting both legs, greater on the left side versus the right, in an L5 and S1 distribution, as well as "severe acute radiculopathy [with] her paraspinal muscular." Tr. 442.

Upon review of the opinion evidence and the entire record, the Court finds that Plaintiff's challenges have merit. The ALJ gave all the medical opinions "some" weight and essentially rejected Dr. Bauer's opinion that Plaintiff had an exertional ability for sedentary work, could occasionally lift, carry, push or pull 10 pounds, and could occasionally sit, stand, walk, climb, and "reach overhead at or below the shoulder level." Tr. 331. The ALJ instead assessed a light RFC with occasional lifting of 20 pounds and frequent overhead reaching. Tr. 15. Accordingly, the ALJ's conclusions appear to reflect a middle ground as to some aspects of the RFC that no treating or consultative physician assessed, which does not adequately support the ALJ's finding that Plaintiff is capable of light work with the noted restrictions. *See Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (finding that "[m]edical evidence at both ends of the spectrum . . . is not substantial evidence for a finding that the extent of the disability is fifty percent capacity" where contradictory opinions stated that plaintiff had a total inability to use his hand and a full ability to use his hand).

While an ALJ is free to choose between properly submitted medical opinions, he is not free to "selectively pick and choose only evidence supporting her [or his] already determined RFC, and the ALJ is not permitted to reinterpret the doctor's own medical findings in favor of her own lay reading of the medical data." *Bridges v. Comm'r of Soc. Sec.*, 19-cv-29-JGW, 2020 WL 1986919, at *4 (W.D.N.Y. Apr. 27, 2020); *see also Caternolo v. Astrue*, No. 6:11-CV-6601 (MAT), 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of Social Security law than an ALJ cannot pick and choose only parts of a medical opinion that support his

determination." (internal citations omitted) (collecting cases)). "[I]n weighing evidence, the ALJ cannot arrive at specific limitations that do not appear anywhere in that evidence." *Heckman v. Comm'r of Soc. Sec.*, 6:18-cv-06032-LJV, 2019 WL 1492868, at *4 (W.D.N.Y. Apr. 4, 2019); *see also McBrayer v. Sec'y. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Without "some explanation" from the ALJ "as to the tether between [the] RFC and the non-stale medical opinions or statements from plaintiff, the RFC appears to be based upon [the ALJ's] lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018). Such is the case here. The ALJ effectively rejected some portion of each of the medical opinions, giving all of them "some" weight," and then determined Plaintiff's physical functional assessment based on his own interpretation of the objective medical findings. The record is devoid of any medical authority supporting the ALJ's light RFC finding, which is therefore not based on substantial evidence. In particular, the Court finds problematic the ALJ's findings with respect to Plaintiff's ability to reach and her ability to tolerate exposure to dust, fumes, odors, pollutants, etc., which differ from the medical assessments.

Furthermore, this is not a case in which Plaintiff had only minor impairments such that the ALJ "was within [his] discretion to make a 'common sense judgment' concerning [Plaintiff's] limitations, and no medical opinion evidence was necessary." *Lilley v. Berryhill*, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018). "It was necessary for the ALJ to rely upon a medical source's opinion in considering the limitations, if any, associated with this impairment." *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (ALJ cannot render a

10

common-sense judgment about a claimant's functional capacity where the record "contain[s] complex medical findings and do[es] not suggest only minor impairment).

Plaintiff's second point also has merit. The ALJ assigned Dr. Bauer's opinion "some weight," stating that his opinion was inconsistent with other medical providers' opinion and not supported by objective clinical and diagnostic findings. However, Dr. Bauer's opinion is, in fact, largely consistent with the record as whole, including the initial MRIs showing nerve root compromise (Tr. 269-70, 271-72), a multi-level, two stage lumbar spine surgery (Tr. 283, 288), Dr. Cappuccino's later clinical findings, and the later MRI and EMG findings. Thus, the ALJ's determination that Dr. Bauer's opinion was inconsistent with other opinion and not supported by objective clinical and diagnostic findings is not supported by substantial evidence.

Because the ALJ effectively rejected all medical opinions in the record, he left an evidentiary gap in the record warranting remand. *Martin v. Berryhill*, 16-cv-6184-FPG, 2017 WL 1313837, at *3; *see also House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) ("Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate.").

On remand, the ALJ. should thoroughly explain his findings in accordance with the regulations *See Martin*, 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record . . . ") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) ). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Plaintiff's] RFC." *Martin*, 2017 WL 1313837, at *4. In this case, the ALJ should develop the record as necessary to obtain opinions as to Plaintiff's

functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 23) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 24) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE